Next case for argument is Kidd v. Gomez. Ms. Aronoff. Good morning, and may it please the Court. Since his very first court appearance in this case more than 37 years ago, Leonard Kidd has consistently claimed Chicago police tortured him into confessing to murder. Yet when Kidd came to the Illinois Appellate Court with compelling new post-conviction evidence supporting his torture claim, the Court unreasonably ignored, minimized, and compartmentalized that evidence. As a result, the Court left undisturbed a 1996 holding that Kidd's confession was voluntary. In fact, clear and convincing evidence demonstrates that the confession was not voluntary. The investigation in this case was supervised by John Burge, who, as we now know, and who, as the record shows, presided over a regime in which Chicago police routinely tortured suspects. Was he involved in this case? Yes, Your Honor, he was. He was present at the police station the night of the interrogation and supervised the detectives that directly interrogated my client. In addition, Kidd has supervised. What do you mean he supervised? They reported to him and he was present and overseeing the investigation that night. By overseeing the investigation, he can be present in the building, but it doesn't mean he was there while the interrogation took place. Your Honor, that is a disputed fact in the record. Kidd has alleged that Burge tortured him. That being said, at the time of the suppression hearing, he did not mention Burge's name. But there is evidence that has come to light since the time of the suppression hearing that bolsters Kidd's claim that Burge was present. Counsel, during the state post-conviction hearing, did your client or his counsel ask for a hearing to resolve the question? Judge Ripple, I can't hear your question. I don't know whether that's a volume problem at your end or at our end. Let's make sure we've got enough volume here. We are all set here, Judge Easterbrook. I can hear him as well. So I think we need it a little louder in the courtroom. Okay, apparently all set. Go ahead. Great, thank you. Counsel, during the state post-conviction hearing, did your client request a hearing on the question of the extent of Mr. Burge's participation in the interrogation or the circumstances of his interrogation? Yes, Your Honor. Mr. Kidd vigorously sought an evidentiary hearing in this case and was not allowed one by the Illinois courts. And did the Illinois courts have anything to say with respect to why a hearing was not justified? So I think it involves the stage of the post-conviction process at which this was. Only if you get to the third stage of the Illinois post-conviction process are you entitled to a hearing. And the court determined that the evidence here did not rise to the level that warranted an evidentiary hearing. So one never occurred. What is the So the standard is that you have to allege a credible claim of torture, that the confession was not voluntary. And it's not supposed to involve any credibility determinations until you get to the third stage. And what did the judges in Illinois think was deficient in your client's presentation that would not have gotten them there? There are three main areas that they thought were deficient. They found my client to be not credible, which is arguably inappropriate determination at this stage of the process in Illinois. They also found that the evidence did not support that Burge was involved in the case, which we vigorously dispute in our brief. They downplayed the relevance of the testimony in deposition questions where the Fifth Amendment right against self-incrimination in response to direct questions about whether they tortured my client. And they said that the other evidence was essentially inconclusive. You used the word downplay. What do you mean by that? How did they court downplay that evidence? So Leonard Kidd's post-conviction petition included evidence that in response to direct and specific deposition questions about whether Leonard Kidd was tortured, John Burge and the two detectives that were chiefly responsible for interrogating my client invoked their Fifth Amendment right against self-incrimination. And in response to that evidence, the Illinois Appellate Court, in half a paragraph, described the indication of the Fifth Amendment as occurring during deposition testimony in the case of Patterson v. Burge, which it treated as essentially an unrelated civil case. And it did not even address the fact that these questions were specific to Leonard Kidd and the question of whether his confession was voluntary. I'm sorry. Go ahead, please. Oh, sorry, Your Honor. The last thing I would note about that is that the court wrote in its opinion that although it could draw an adverse inference from the indication of the Fifth Amendment in this case, it was not required to. And, you know, in our brief, we argue that that is a patently unreasonable position on this evidence to not draw an adverse inference from that. Just to close the loop, and then I'll let you get back to your presentation. When you appeared before the district court in this habeas action, did you ask for a hearing on the questions we've just raised? Yes, Your Honor, we did. And the district court denied that request in its opinion. And did you advise the district court as to the circumstances that surrounded the denial of hearing in the state court? Yes, yes, we did. And what did the district court have to say about all this? The district court's view is that even if you concluded that the admission or that Mr. Kidd's a product of police torture, that its admission at the trial was harmless error under Brecht, and therefore, there would be no point in having an evidentiary hearing. In other words, am I correct that you failed to show that there was a causal connection between the supposed torture on the night of January 12th, and the two confessions in our issue that were quite a bit later, and when your client was fully counseled? Am I right? Yes, Your Honor, that's correct. How do you answer that question? How do you answer that question of causality? It's very hard for us, I think, looking at the cold record to see any causal connection. Your Honor, I certainly understand that. And as an attorney, that's not the kind of evidence you like to see in your client's record either. But I think this goes to the importance of doing a correct harmless error analysis in this case. So when the district court analyzed harmless error, it purported to apply Brecht. But in fact, it really just did a sufficiency of the evidence analysis. And you can tell this from its opinion, because it purports to review independent evidence in the record that supports Kidd's conviction, without looking at the circumstances of how the state tried its case. It's very important to recognize that the state's theory at trial relied heavily on the confession that Kidd argues was procured by torture. And the state's theory was that Kidd and his brother, Leroy Orange, committed this crime together. The other confession was admitted at trial. But in its closing argument, the state specifically asked the jury to not believe that confession. It was admitted for the purposes of showing that Leonard Kidd was not trustworthy, but it was not the state's theory at trial, that that confession was a true version of events that the jury should believe. And the harmless error standard requires looking at the trial that actually happened. It's not a sufficiency of the evidence analysis. It requires reviewing the importance of the challenged evidence to the state's case, the strength of the other evidence, and how the admission of the challenge evidence affected the other evidence in the case. In this court's case law, it's very clear that it's not a sufficiency analysis. It could well be that under a sufficiency analysis, there's sufficient evidence in the record for Leonard Kidd's conviction to stand, but that is not a harmless error analysis. And so I think that our argument here is that the district court should have done a correct harmless error analysis, and if it had, the case would come out differently. And how would you conduct, if you were in our position, that harmless error analysis? I think that the starting point would be to appreciate the importance of this tortured confession to this case that the state put on at trial. It was the centerpiece of the state's case. A huge amount of testimony went towards establishing it, including from the two detectives who are alleged to have tortured Mr. Kidd and the assistant state's attorney that took the court-reported version of this statement. The state's evidence all went towards proving this theory, and if you remove it, the state's case really doesn't make any sense. There are like dribs and drabs of evidence, but it's not a coherent theory of the case at that point. And the question that you have to ask is, did it have a substantial and injurious effect on the state's case? I think there can be no question that it affected the jury verdict in an extremely prejudicial way. And so that is the analysis that we would ask this court to do, as it has done in numerous other cases involving a similar error over the years. Can I suggest to you the niggling issue that you can't help but hit when you look at this record? This lawyer, now deceased, named Washington. According to your client's testimony, he at some point said that he would represent Orange and that if Orange and if then he would represent Kidd and that Kidd's testimony, and that if Kidd in effect helped him out with Orange, then he'd be able to help Kidd out. Now, your client is a person afflicted with an intelligence issue, and testimony is that he tends to go along with the last person who talked to him and has a hard time seeing around the corner. Why isn't it a good explanation that he wasn't under the influence of this police officer and his torture by the time he gave these confessions, but really under Washington's influence? He thought he was cooperating and going to get a deal here at the end. So, your honor, we don't argue that the subsequent confession where he takes sole responsibility for the crime is the product of police torture. I think we would concede that that is not related to the torture, but that's why we would go back to the harmless error analysis, which is even if you concede that this evidence would still be in the record, you have to look at how the admission of the tortured evidence affected the trial that occurred. I'm terribly sorry to have to ask another question, then, is what confession do you believe was the product of the police torture? It is the confession that Leonard Kidd gave to the police and to Assistant State's Attorney Dernbach at Area 2 after the crime in January 1984, in which he says that he and his brother committed the crime together. And that's the only one? Yes, your honor. And just to point out, I would like to reserve some time for rebuttal, and I see that I'm at the end of my time. I appreciate it. Certainly, Ms. Aronoff. Thank you. Ms. O'Connell. Good morning. I'm Attorney General Erin O'Connell on behalf of the respondent. This court should affirm the denial of habeas relief on two grounds. First, the district correctly found that the error here in admitting the confession, even if it was error, was harmless. And second, the district court correctly concluded that the state appellate court's adjudication of the coerced confession claim was reasonable under 2254D. I wanted to start first with the harmless error question. This court in the Hinton v. Uchtman case confronted a similar verge-related issue. The court in that case ultimately resolved the case on harmless error grounds and didn't go on to then reach the merits of the underlying claim. In this case, the harmless error issue is even more obvious and clear than it was in Hinton, because we have here a petitioner who testified twice under oath that he committed the four murders. There was, leading up to his arrest, some very important admissions that he made to his co-defendant's wife, Mildred Orange, in which he admitted to her that the two of them had committed a serious crime and might go away for life. He said that Renee Coleman had been stabbed. And then when the petitioner was arrested after making these admissions, he was found to be wearing the watch of one of the victims, Ricardo Pedro. There was really important evidence linking him to the crime, even before he was questioned at all. There was his subsequent testimony on two occasions. And then there was also the fact that he corroborated that testimony on those later occasions with the actual physical evidence, the knives that were recovered from the dumpsters, which even in his testimony, he identified those objects, that these were the murder weapons, and he admitted that he had led police to those locations to find those weapons. So all that evidence is very powerful evidence of guilt here, and it clearly demonstrates that there is no substantial injurious effect. There's no... I'm sorry. Go ahead, Your Honor. Do you agree with counsel for the defense that the only confession and issue in this appeal is the confession he gave on the night of January 12th? Yes. So the only issue that's challenged here is whether the police statement that he gave was properly admitted. And I did want to clarify what's in that statement, because I think counsel was incorrect. The statement that he gave to police was that Leroy Orange alone committed all four murders, that Petitioner Kidd was present in the apartment at the time, but he disavowed any active involvement or knowledge of the crimes. And so in that statement, he placed 100% of the blame on Leroy Orange. He, in his later statements or his testimony, instead took sole responsibility for committing the four offenses. The state has never said that any of these versions is the entire truth. The state's theory at trial was both of these men likely committed the crimes together because there were four victims, there were multiple murder weapons and knives used here. The theory was that it was a little unrealistic to believe that one person could have overpowered three adults and a child in order to commit these by himself. So the state argued these were Petitioner's versions of events. You know, this was the progression starting with the police statement. They became more inculpatory over time. And ultimately, it became closer to the truth with respect to Leroy Kidd as he later testified that he was integrally involved in committing the actual He may not have actually, as he said, committed all for himself. It did become clear later on that he was attempting to protect Leroy Orange by taking sole responsibility. And he testified to that effect at Orange's own trial on behalf of the defense that he alone had committed the crimes and Orange was innocent. But the truth lay somewhere in between. And that was the state's assertion at trial, the state's sudden closing argument very clearly. Somewhere, we can't believe anything 100% that Leroy Kidd has said. But we do know based on all of the evidence, including the physical evidence, that he and Orange were both present in the apartment at the time they both were likely involved. And there was ultimately a theory of accountability. So the theory was, we know that both of these men committed it together, it ultimately didn't matter who committed the crimes with respect to each victim, they were both guilty of all four murders. So in the view of the state today, the governor was wrong in his granting complete clemency to to Orange, is that right? So the state's theory is that Orange was likely not innocent, which case in finding that justice would be served by granting the clemency to Leroy Orange. So I believe the state's theory would still have to be the most likely scenario is that two men committed these crimes just based on the physical evidence and the level of violence and the binding of all four victims. So that would be at a retrial, the state would still be bound, I think, to present what the state thinks its case is, what the evidence, the truth is here. But the state would, at a trial, if this court were to find it was wrong to admit the police statements, then be left with Leonard Kidd's testimony under oath that he alone committed the four crimes. So that would be the primary basis of the state's case at a retrial. And it's telling, I think, that at the initial trial, it was defense counsel who urged the jury to credit the police statements over the testimony. And defense counsel even admitted Leroy Orange's statement in which Orange corroborated everything that Leonard Kidd had told police and said I alone committed the four murders. If the court were to find that Kidd's statement was coerced, defense counsel would be left without this argument that this was more sculptured version was the truth and would be confronted instead with all of Kidd's testimony under oath. And in a habeas proceeding, certainly, and as was the case in Hinton, even assuming that these were coerced statements, there was no license for this defendant to lie under oath at a court proceeding. He stuck with the story that he gave under oath, and that story, according to him, is that he committed these four murders acting alone. I would appreciate your view on the question I asked counsel for the defense with respect to why the state court and why the district court did not grant a hearing on the question of whether there had been any torture and whether that torture had effect on the latter two confessions. So to answer the latter question first, the district court denied a hearing because it was harmless error. So there would ultimately, even if he showed a violation, be no habeas relief. And the district court also denied a hearing on the basis that the state court's adjudication was reasonable under 2254 D. To get to the state court's reasoning, at the state court determined that there was no, there was inadequate evidence to revisit the determination made on direct appeal that the statements were not coerced. And so the court examined all of the new evidence that petitioner had offered and went through that evidence and determined that it was insufficient. Primarily, the evidence that was submitted in state court, and here is evidence of Burge's involvement in an overarching torture scheme at area two during the time in question. Much of the evidence did not relate specifically to petitioner himself. The only evidence that related specifically to petitioner was the assertion of the fifth amendment right of the law enforcement involved in this case when asked at a deposition whether they had tortured kid. They asserted the fifth amendment right to decline to answer that question. The state court in this case declined to draw an adverse inference from that evidence. The state court recognized that it was free to do so, but ultimately determined that it wasn't warranted in this case. So this court has to find that that was unreasonable on habeas review and where this is a permissible inference either way petitioner cannot make that showing. I did want to touch briefly on the emphasis on John Burge in particular. So kid's version of events given to the special prosecutor again under oath was that Burge was centrally involved and actually personally involved in in his torture at the time of the confession. The problem with that account is it stated initially at the time of trial which did not mention Burge and then the court noted that the documentary evidence did not support his new allegation that Burge was personally involved in interrogating him. So it was based on the credibility of his allegation of Burge's personal involvement and that was the reason one reason that the court found that he had not met his Burge regime. The court did look at the nature of his testimony to the special prosecutor and there were certainly some serious credibility issues there. So the special prosecutor also concluded that his version was false and this went beyond John Burge's involvement. I would certainly urge the court to look at kid's version of events as given to the special prosecutor. He again attempted to blame this crime on Slick Brick and Ricky Jones which is implausible. He told the special prosecutor that there was a tape player that was in the apartment at the time of the murders that had recorded everything and was lost. There were some very bizarre things that he told the special prosecutor and ultimately the prosecutor emphasized that this was just too special prosecutor concluded ultimately that he was not credible in his allegations. So the state court did consider that in denying the evidence you're hearing and that is certainly something that kid would have to confront at any hearing involving live testimony on the evidence of whether his statement was coerced, the version that he gave to the special prosecutor, how that is varied from the version he gave it at the time of his initial suppression hearing. The state court did reasonably determine that he had not met his burden of sufficiently showing coercion to revisit the adjudication of his confession claim. So but the court can also affirm the district court's denial of relief solely on the harmless error basis without going through the evidence and determining the reasonableness of the state court's review of that evidence. And so your counsel for the defense also indicated that there perhaps had been an error in the state court collateral proceeding at stage two in that credibility determinations were made. What's your response to that? Well I disagree that there were credibility determinations made but ultimately this court doesn't consider the procedural error that was alleged to have been committed in the collateral proceedings. It's essentially a state law issue as to whether the court properly made credibility determinations or not. This court would instead just be evaluating the reasonableness of the adjudication based on the evidence that was before the court. So ultimately the court's subjective reasoning and whether it relied on the credibility determination isn't dispositive of the issue before this court which is whether it was reasonable adjudication in light of the evidence that was before the state court you know the full record that this petitioner had submitted to the state court at the time. So if the court has no further questions we would urge this court to affirm the denial of hubris relief on either or both grounds relied upon by the district court. Thank you Ms. O'Connell. Anything further Ms. Aronoff? Yes your honor I would like to respond to a few of the points raised by opposing counsel in her argument. I think the first is the state's position that the determination that Kidd's confession was voluntary was reasonable is simply not consistent with the evidence that Leonard Kidd has put forth in his post-conviction petition. In particular the state seeks to turn this into a battle over Mr. Kidd's credibility. But the fact is that Mr. Kidd has never been believed in this case. The thing that has changed with the new post-conviction evidence is that it indicates that the police and prosecutor that said Kidd was not abused were not telling the truth at the suppression hearing. And so the question is would the suppression hearing have come out a different way if you know that evidence had been available at the time? It was not. And then the second point that I would like to point out is that the state's review of the evidence that is allegedly independent of torture is a sufficiency analysis and not a harmless error analysis. Because a lot of the evidence that the state points to are sort of supporting the fact that Leonard Kidd committed this crime was in fact brought in at trial through the detectives who are alleged to have tortured Kidd. So you can't just assume that evidence would come in. You have to look at the spillover effect and the practical effect of the state trying to introduce that evidence through the detectives who are alleged to have committed torture. And I think I'd like to close by noting that it's important for courts to keep in mind the seriousness of the allegations that Mr. Kidd makes here. Whatever attacks on his credibility he has been consistent in alleging that police tortured him since the very beginning of this case. And if there are things at the edges that sort of make his statement a little bit less believable, keep in mind that this is an intellectually disabled man. This is an extreme malfunction in the criminal justice system that he is alleging and it should be taken seriously. We ask that this court grant Mr. Kidd's petition. Thank you. Thank you very much Ms. Aronoff. The case is taken under advisement.